IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GEORGE B. SHAW,                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )     C.A. No. 17-00076-MN
                                         )
SGT. ROBERT MOCK,                        )
                                         )
                    Defendant.           )

## **<u>MEMORANDUM OPINION</u>**

Adam J. Waskie, Andrea Brooks, David E. Wilks, WILKS LAW, LLC, Wilmington, DE; Julie M. O'Dell, SMITH, KATZENSTEIN & JENKINS, LLP, Wilmington, DE – Attorneys for Plaintiff

Rebecca Song, STATE OF DELAWARE, DEPARTMENT OF JUSTICE, Wilmington, DE – Attorney for Defendant

December 2, 2020
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff George B. Shaw ("Shaw") filed an action pursuant to 42 U.S.C. § 1983, alleging violation of the Eighth Amendment. (D.I. 44). Presently before the Court is the motion of Defendant Sgt. Robert Mock ("Mock") for summary judgment. (D.I. 66). The motion has been fully briefed. (D.I. 67; D.I. 70; D.I. 74). Mock filed a concise statement of facts in support of his motion. (D.I. 68). Shaw filed a response to Mock's statement (D.I. 71) and a counterstatement of facts (D.I. 72) in opposition to summary judgment. For the reasons set forth below, the motion for summary judgment is DENIED.

## I.    BACKGROUND

### A.    Factual Background

Shaw is an individual who, during the relevant time period, was incarcerated in the Security Housing Unit ("SHU") of the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. (D.I. 68 ¶ 1). On October 20, 2016, correctional officers, including Mock, responded to the SHU, where an inmate had broken a sprinkler and was yelling for other inmates to "flood the tier." (*Id.* ¶ 2; D.I. 44 ¶ 12). Shaw yelled, "flood it." (D.I. 68 ¶ 2). In response, Mock said to Shaw, "Shut up, you snitch," several times in front of approximately twenty-five inmates. (*Id.* ¶ 3).

That evening, in response to the incident, Shaw filed a grievance form, requesting a transfer and an immediate investigation by Internal Affairs. (D.I. 68 ¶ 4; D.I. 67-1, Ex. A). On October 24, 2016, the grievance form was returned to Shaw and marked "unprocessed," along with a "Return of Unprocessed Grievance" form. (D.I. 68 ¶ 4; D.I. 67-2, Ex. B). The "Return of Unprocessed Grievance" form provides two reasons for the rejection. (D.I. 67-2, Ex. B). First, the form states that "[r]equests are not processed through the grievance procedure," and advises the grievant to "[c]orrespond with the appropriate Office to secure the information that is

1

requested."  (*Id.*).  Second, the form instructs the grievant, "[t]o request that the actions of staff personnel be investigated write to your Unit Commander with that request.  If you receive no response or are dissatisfied with the response of your Unit Commander you may appeal that decision to the Operations Superintendent and ultimately to the Warden."  (*Id.*).

On the night that Shaw's grievance was returned unprocessed, Shaw wrote a letter to Captain Marcello Rispoli ("Captain Rispoli") requesting action against Mock's "campaign of harassment" against Shaw.[1]  (D.I. 68 ¶ 5; D.I. 72 ¶ 7).  Around this time, Shaw also wrote a letter to Internal Affairs Agent Stanley Baynard ("Agent Baynard"), detailing the incident in which Mock called Shaw a snitch.  (D.I. 68 ¶ 5; D.I. 72 ¶ 8).  Shaw handed both letters to a correctional officer to send via in-house mail because Shaw was unable to leave his cell to place the letters in the grievance box.  (D.I. 68 ¶ 5; D.I. 72 ¶ 9).

After receiving no response from the letters to Captain Rispoli or Agent Baynard, Shaw attempted to identify the Operations Superintendent by asking inmates and correctional officers.  (D.I. 72 ¶ 11).  One correctional officer told Shaw that there was only a warden, two deputy wardens, and two majors.  (*Id.*).  Upon receiving this information and within a week of receiving the unprocessed grievance, Shaw wrote a letter to Deputy Warden James Scarborough ("Deputy Warden Scarborough") detailing the incident during which Mock called Shaw a "snitch."  (D.I. 68 ¶¶ 5–6).  Shaw also handed this letter to a correctional officer.  (*Id.* ¶¶ 5, 7).

---

[1]      Captain Rispoli was Shaw's Unit Commander, according to Shaw's First Supplemental Answers to Defendant's First Set of Interrogatories.  These supplemental answers are excerpted in Mock's reply brief in support of his motion for summary judgment but were not provided to the Court.  (*See* D.I. 74 at 2).

At his deposition, Shaw stated that he may have also written to Warden David Pierce ("Warden Pierce") about the incident several weeks after it had occurred. (*Id.* ¶ 10). Shaw stated that he handed this letter to a correctional officer to deliver. (*Id.*).

### B.    Procedural History

On January 27, 2017, ninety-nine days after filing his grievance, Shaw filed a Complaint pursuant to 42 U.S.C. § 1983 against thirteen officials alleging violations of his constitutional rights. (D.I. 3). The Court dismissed all claims except Shaw's allegations against Mock relating to the "snitch" incident. (D.I. 14 at 13). Shaw filed an Amended Complaint alleging only a violation of the Eighth Amendment against Mock in relation to the "snitch" incident. (D.I. 44).

On July 3, 2019, Mock filed a motion to dismiss the Amended Complaint, arguing that Shaw had not exhausted his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. (D.I. 48). The Court denied the motion to dismiss and ordered limited discovery on the issue of whether Shaw exhausted his available administrative remedies. (D.I. 56). Following completion of the limited discovery, Mock filed the instant motion for summary judgment. (D.I. 66).

## II.    LEGAL STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). If the moving party carries its burden, "the

nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks, citation, and emphasis omitted).  The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The mere existence of some alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis omitted).  "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

## III.   DISCUSSION

The parties largely agree about the facts.  Mock states that, after receiving the unprocessed grievance form, Shaw wrote letters to Captain Rispoli, Agent Baynard, and Deputy Warden Scarborough.[2]  (D.I. 68 ¶ 5).  Mock states, and Shaw does not substantively dispute,[3] that Shaw did not write a letter to the Operations Superintendent.  (*Id.* ¶ 12).  Similarly, Mock states, and Shaw does not substantively dispute,[4] that the operative Department of Corrections ("DOC")

---

[2]      Ostensibly to cast doubt that Shaw sent the letters, Mock notes that Shaw did not keep copies of these letters and could not identify or describe the correctional officers to whom he handed the letters to be delivered.  (D.I. 68 ¶¶ 5, 6, 7).  Shaw challenges this inference, stating that he was unable to make copies of the letters because he lacked funds and could not access the law library while housed in the SHU, and he could not remember to which correctional officer he handed his letters because he had submitted several grievances in this manner.  (D.I. 71 ¶¶ 5, 6, 7).  At this stage, drawing all reasonable inferences in favor of the nonmoving party, the Court infers that Shaw sent these letters.

[3]      Shaw claims that he attempted to identify the Operations Superintendent but, upon being told there was only a warden, two deputy wardens, and two majors, wrote to Deputy Warden Scarborough.  (D.I. 71 ¶ 12).

[4]      Shaw argues that his grievance was not subject to the 180-day limit for resolving grievances because it was returned as unprocessed.  (D.I. 71 ¶ 13).

policy provides JTVCC staff 180 days to complete the grievance process, whereas Shaw filed his suit just over ninety days after the "snitch" incident.[5]  (*Id.* ¶ 13).  Notwithstanding the parties' substantial agreement as to these issues, the Court finds that on the facts presented, Mock has not met his burden of proving that Shaw failed to exhaust administrative remedies as required by the PLRA.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Failure to exhaust administrative remedies is an affirmative defense, which must be pleaded and proven by the defendant.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The PLRA requires proper exhaustion, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  The prison's grievance procedures "supply the yardstick" for the applicable procedural rules required for proper exhaustion of administrative remedies.  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (internal quotation marks omitted).  If prison authorities thwart an inmate's

---

[5]     There is a dispute about whether Shaw wrote a letter to Warden Pierce about the "snitch" incident.  Shaw stated that he may have at his deposition, and Mock argues that Shaw's deposition testimony is contradicted by all other evidence.  In any event, Shaw does not argue that a genuine issue of material fact over whether Shaw sent a letter to Warden Pierce precludes summary judgment.  Instead, he argues that summary judgment is improper because Mock has not proven that Shaw failed to exhaust all administrative remedies. (D.I. 70 at 5–8).

efforts to pursue an administrative remedy, that remedy is not "available" for purposes of exhaustion analysis.  *See Rahim v. Holden*, 882 F. Supp. 2d 638, 642 (D. Del. 2012) (denying motion to dismiss because defendants did not show failure to comply with prison's grievance procedure when inmate was notified that his issue was "non-grievable"); *Brown v. Croak*, 312 F.3d 109, 111–12 (3d Cir. 2002) (reversing dismissal based on unresolved factual question of whether prison officials informed inmate that administrative remedies were not "available" until termination of pre-grievance investigation, and then indefinitely delayed completion of the investigation).

Mock details Shaw's failure to exhaust administrative relief as follows:

> Plaintiff did not provide evidence of compliance [with] []DOC's Policy 4.4 prior to filing suit in this matter.  He claims he wrote several Prison Officials, but he could not provide any detail regarding the correspondence and he did not keep a copy of any of the letters.  Furthermore, Mr. Shaw could not say, for certain, if he wrote the Warden about this incident and admitted he never wrote the Operations Superintendent.   Mr. Shaw's own testimony confirms he failed to exhaust the administrative remedies outlined in Policy 4.4, despite his filing suit within 180 days of the incident.

(*Id.* at 7–8).  In his reply brief, Mock clarifies Shaw's failure to exhaust, stating: "Even if this Court were to disregard Policy 4.4 and the 180-day requirement, Plaintiff still did not exhaust his Administrative Remedies . . . [because] [t]he evidence produced, or lack of evidence, demonstrates that Shaw did not write to Warden Pierce."  (D.I. 74 at 5–6).  Mock's argument that Shaw did not satisfy the exhaustion requirement of the PLRA fails for several reasons.

First, Mock improperly places on Shaw the burden of pleading and proving exhaustion. Mock argues that Shaw "did not provide evidence," "could not provide any detail," and "did not keep a copy of any of the letters," and asks the Court to consider Plaintiff's lack of evidence as the

basis to grant summary judgment.  It is, however, Mock's burden to plead and prove that Shaw failed to exhaust all administrative remedies before seeking relief from the Court.

Second, Mock has failed to explain what steps Shaw was required take to satisfy exhaustion under the PLRA.  Mock presumes, without explaining, that DOC Policy 4.4 governed the administrative remedies available to Shaw.  (*See* D.I. 67 at 7 ("Prison grievance procedures, like DDOC's Policy 4.4, provide the 'yardstick' for determining what steps are required for exhaustion.")).  In a relatively recent case in this District, the court analyzed the three-step non-emergency grievance resolution procedure of DOC Policy 4.4 and stated that:

> At step one, an inmate must submit a Grievance Form within seven days of the incident.  The Inmate Grievance Committee ("IGC") collects the Grievance Form and inputs the grievance information into an electronic database.  Grievance information is forwarded to the employees involved in the grievance.  Employees are given fourteen days to respond to the inmate's grievance.  If the inmate accepts the grievance reply, the grievance is resolved.  If the reply is rejected, the grievance procedure moves on to step two.

*Biggins v. Addogoh*, C.A. No. 12-1666-GMS ¶ 1 n.1 (D. Del. June 23, 2015) (order granting summary judgment) (internal citations omitted).  In step two, the grievance is reviewed by a committee or expert.  *Id.*  If the inmate does not accept the result of the review, at step three, the inmate submits an appeal and the Bureau Chief issues a final decision.  *Id.*  The Policy also states: "The maximum period between initial Grievance receipt and *Bureau Chief final decision* shall not exceed 180 calendar days."  (D.I. 67-4, Ex. D at 4 (emphasis added)).

Here, Shaw filed a grievance on the day of the "snitch" incident.  Four days later, the grievance was returned unprocessed along with the "Return of Unprocessed Grievance" form signed by the "Inmate Grievance Chairperson."  The rejection form instructs Shaw to take further action and gives no indication that the grievance would be forwarded to the named prison officials, in accordance with the three-step non-emergency grievance resolution process.  Thus, Shaw's

grievance does not appear to be governed by Policy 4.4 or subject to the 180-day grace period for the Bureau Chief's final decision. Mock has therefore failed to show how Shaw's initiating the present action within 180 days of his grievance constitutes circumvention of administrative remedies.

Nor has Mock explained why Shaw's correspondence with prison officials constitutes noncompliance with the "Return of Unprocessed Grievance" form. The rejection form first instructs Shaw to contact the "appropriate Office" but does not state what that office is. Second, the form instructs Shaw to write, in order, to the Unit Commander, the Operations Superintendent, and the Warden. It is Mock's burden to explain how Shaw was to comply with this potentially contradictory guidance, as the "yardstick" for measuring proper exhaustion under the PLRA. Mock, however, has not explained why his arguments ignore the first set of guidance that removes Shaw's "request" from the grievance procedure, or how Shaw's failure to write to the Operations Superintendent constituted failure to exhaust when he was unable to ascertain the identity of the "Operations Superintendent" from correctional officers. *See Brown*, 312 F.3d at 112–13 (3d Cir. 2002) (reversing dismissal when plaintiff alleged that failure to comply with grievance procedure was due to misinformation received from prison officials). This Court has previously noted that the "return of unprocessed grievance" instructions in use at JTVCC are "confusing at best." *Rahim*, 882 F. Supp. 2d at 643. Mock has not met his burden of proving that Shaw failed to exhaust his administrative remedies as outlined in the "Return of Unprocessed Grievance" form.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant Sgt. Robert Mock's Motion for Summary Judgment (D.I. 66) is DENIED.

An appropriate order follows.